UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MARCIA A. LYNCH,

                              Plaintiff,        09-CV-00623

            v.                                  **DECISION
                                                and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security,

                              Defendant.
_____


## Introduction

Plaintiff Marcia A. Lynch brings this action pursuant to Title II of the Social Security Act seeking review of a final decision of the Commissioner of Social Security ("the Commissioner") which found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that the decision of the Appeals Council and the findings it incorporated from the decision of Administrative Law Judge ("ALJ") Timothy McGuan did not apply the correct legal standards and were not supported by substantial evidence in the record.

The Commissioner moves for judgment on the pleadings on the grounds that the decision of the Appeals Council was supported by substantial evidence in the record and was based upon the application of the correct legal standards. Plaintiff cross-moves for judgment on the pleadings and opposes the Commissioners's motion on the grounds that the Commissioner's decision was not supported by substantial evidence. For the reasons discussed below,

the Court denies the Commissioner's motion for judgment on the pleadings, grants Plaintiff's cross-motion for judgment on the pleadings, and remands this claim to the Commissioner for further proceedings consistent with this decision.

## Background

Over thirteen years ago, on January 12, 1998, plaintiff filed an application for Social Security Disability benefits under Titles II and XVIII of the Social Security Act. (Tr. 248-50.) On March 23, 1998, the Social Security Administration initially denied her application. (Tr. 248-51.) Plaintiff applied for reconsideration, and her application was again denied on June 2, 1998. (Tr. 187-88.) Lynch then requested a hearing, which took place on July 27, before ALJ Eugene Bond.[1] On September 23, 1999, ALJ Bond issued an unfavorable decision (Tr. 153-63), and Plaintiff then requested a review of the decision. On June 20, 2002, the Appeals Council remanded the case for further proceedings. (Tr. 202-04.)

On December 19, 2002, a hearing took place before ALJ Timothy McGuan. (Tr. 74-106.) On June 26, 2003, ALJ McGuan issued a partially favorable decision, finding that Plaintiff was disabled from June 1, 1996 to June 2, 1998. (Tr. 205-20.) On August 12, 2003, Plaintiff appealed ALJ McGuan's decision to the Appeals Council. (Tr. 222.) On several occasions over the following years,

---

[1] The transcript of this hearing does not appear in the record.

Plaintiff's counsel requested a transcript of the hearing before ALJ McGuan, which she did not receive. (Tr. 221-25.)

On October 18, 2006, after three years of inaction by the Social Security Administration, the Appeals Council informed Plaintiff that the exhibit file for her case had been lost, and it remanded the case to ALJ McGuan for a supplemental hearing with respect to Plaintiff's disability status after June 2, 1998. (Tr. 226-28.)

One year later, on November 5, 2007, Plaintiff attended her third hearing (the second before ALJ McGuan). (Tr. 107-49.) On December 26, 2007, ALJ McGuan found that from June 2, 1998 to the date of that ruling, Plaintiff was not under a disability. (Tr. 52-62.) Plaintiff requested reversal of ALJ McGuan's decision from the Appeals Council. (Tr. 49-50.)

Over a year later, on May 13, 2009, the Appeals Council issued a final decision on behalf of the Commissioner and found that Plaintiff was entitled to disability benefits beginning June 1, 1996, but that Plaintiff's disability had ended June 2, 1998 and Plaintiff's eligibility for benefits had ended September 31, 1998. (Tr. 16-21.) On July 8, 2009, Plaintiff filed this action.

## Discussion

### I. Jurisdiction and Scope of Review

Under 42 U.S.C § 405(g), the District Court has jurisdiction to review final decisions of the Commissioner denying Social

Security benefits. *Matthews v. Eldridge*, 424 U.S. 319, 320, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Court reviews decisions of the Commissioner to determine whether its factual findings are supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Review is not *de novo. Id.*

The Court must accept all factual findings made by the Commissioner that are supported by "substantial evidence." 42 U.S.C. § 405(g); *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 149, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 93 L.Ed. 126 (1938)). When the Appeals Council modifies a ruling of the ALJ, "review by the district courts... is to be governed by the substantial evidence standard in terms of the Secretary's final decision as expressed by the final action of the Appeals Council." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *see also*, *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir. 1986); *White v. Schweiker*, 725 F.2d 91, 94 (10th Cir. 1984).

Both Plaintiff and Commissioner move for judgment on the pleadings under U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Under Section 405(g), the Court "shall have

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The District Court should remand for a calculation of disability benefits when persuasive evidence of disability exists and no purpose would be served by further evidentiary proceedings. *Carroll v. Secretary of Health and Human Serv.*, 705 F.2d 638, 644 (2d Cir. 1981). When the record contains sufficient evidence for the court to enter a judgement and the case has experienced significant delay, it may be inappropriate to remand the case for further evidentiary proceedings. *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000); *Randall v. Sullivan*, 956 F.2d 105.109 (5th Cir. 1992).

Rule 12(c) allows judgment on the pleadings when it is possible to rule on the merits from the contents of the pleadings alone and when there is no material dispute of fact. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988). When a complaint fails to state a valid basis for relief, judgment on the pleadings may be appropriate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Because this Court finds that (1) the decision of the Appeals Council was not supported by substantial evidence and (2) the record contains substantial evidence of Plaintiff's disability such that further evidentiary proceedings would serve no

further purpose, judgment on the pleadings is hereby granted in favor of the Plaintiff.

## II. Process of Disability Determinations

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C § 423(d)(1)(A). "Substantial gainful activity" is defined by regulation as "work that--(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

A worker will not be considered disabled if he can perform "substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 USC § 423(d)(2)(A).

SSA regulations at 20 CFR § 404.1520(a)(4)(i)-(v) establish a five-step sequential process for evaluating disability claims:

(1) If the claimant is engaged in substantial gainful activity, then he is not disabled. If he is not, the evaluator proceeds to the next step.

(2) If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments, then he is not disabled. If he does, then the evaluator proceeds to the next step.

(3) If the claimant's impairment or combination of impairments meets or equals one of the impairments listed in 20 CFR Part 404, Appendix 1 to Subpart P, then he is disabled. Otherwise the evaluator proceeds to the next step.

(4) The evaluator determines the claimant's residual functional capacity. If the claimant's capacity allows him to perform his past relevant work, then he is not disabled. If it does not, then the evaluator proceeds to the next step.

(5) If the claimant has the capacity to engage in employment consistent with his vocational experience, then he is not disabled. If he does not, then he is disabled.

Once a claimant establishes disability via this process, the Commissioner bears the burden of showing that a medical improvement has ended the disability. *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002), *Griego v. Sullivan*, 940 F.2d 942, 94, 946 (5th Cir. 1991). In particular, the Commissioner must determine that there is a medical improvement, and that the medical improvement is related to the claimant's ability to do work. 20 CFR § 404.1594(f)(3)-(4). Finally, the Commissioner bears the burden of showing that the substantial gainful activity that claimant can fulfill exists in significant numbers in the national economy. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

In determining Plaintiff's disability status, the Appeals Council adopted the statement of pertinent statutes, regulations, rulings, issues, and evidentiary findings made by AlJ McGuan. (Tr. at 16.) At step one of the determination process, the Appeals Council found that Plaintiff had not been engaged in substantial

gainful activity since 1996. (Tr. at 19.) At step two, The Appeals

Council found multiple severe impairments, including:

> bilateral knee dysfunction secondary to arthritis; lumbar
> spine dysfunction; fibromyalgia; bilateral carpal tunnel
> syndrome...; a sleep related breathing disorder; and an
> adjustment disorder.
> (Tr. at 19.)

At step three, the Appeals Council found that Plaintiff's

impairments did not meet or equal one of the impairments listed in

20 CFR Part 404, Appendix 1 to Subpart P. At step four, the Appeals

Council found that from June 1, 1996 to June 2, 1998, the plaintiff

had a residual functional capacity to perform work at significantly

less than a sedentary level of exertion and, consequently, that she

could not perform her past relevant work. (Tr. at 19.) At step

five, the Appeals Council found that, for this same period of time,

Plaintiff's exertional capacity would have prevented her from

finding work that existed in significant numbers in the national

economy and that she was consequently disabled. (Tr. at 20.)

The Appeals Council next found that on June 2, 1998, the

Plaintiff's medical condition improved to such an extent that she

had a residual functional capacity to perform a restricted range of

work at the light exertional level. (Tr. at 20.) Based on the

testimony of a vocational expert before ALJ McGuan in November,

2007, the Appeals Council held that, given her residual functional

capacity, Plaintiff could perform work that existed in significant

numbers in the national economy and, consequently, that she was not

disabled after June 2, 1998. (Tr. at 20-21.) The Appeals Council further found that Plaintiff did not become disabled at any point subsequent to this date before June 30, 1999,[2] and that her entitlement to disability and disability insurance benefits ended on September 31, 1998.

**III. The Appeals Council's decision that Plaintiff was no longer disabled on June 2, 1998 is not supported by substantial evidence in the record.**

*A. The Commissioner committed legal error by failing to provide "good reasons" for denying controlling weight to the medical opinions of Plaintiff's treating physicians.*

The determination of a claimant's statutory disability status is reserved for the Commissioner, and a physician's conclusion that his patient qualifies for disability is not itself controlling. CFR § 404.1527(e). However, SSA regulations provide that controlling weight be given to the medical opinions of a claimant's treating physician, so long as they are well-supported by medical evidence and not inconsistent with the record as a whole. 20 CFR § 404.1527(d)(2).

The opinion of the treating physician will be given more weight according to the length of his treating relationship with the claimant, and the medically relevant nature of his relationship to claimant's disability. 20 CFR § 404.1527(d)(2)(i)-(ii). When the opinion of the treating physician is well supported by medical

---

[2] The date after which Plaintiff would not have met the insured status requirement for disability benefits if her disabled status had ended June 2, 1998.

-9-

evidence and is consistent with the record in general, his opinion will be given proportionally greater weight. 20 CFR § 404.1527(d)(3)-(4). The opinions of specialist treating physicians will be given greater weight with respect to a claimant's medical conditions related to their specialty. 20 CFR § 404.1527(d)(5).

SSA regulations also require that claimants will receive "good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 CFR § 404.1527(d)(2). The Second Circuit has held that the Commissioner must provide good reasons when they discount the opinion of claimants' treating physicians. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75 (2d. Cir 1998); *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999). The Commissioner must provide more than a "bare statement that 'the record is consistent with claimant retaining a residual functional capacity to perform [substantial gainful activity].'" *Butler v. Barnhart*, 353 F.2d 992, 1003 (D.C. Cir. 2004). The Commissioner must provide clear reasons for the weight he gives the evidence, because the Court "cannot properly review the ALJ's decision without these necessary findings." *Watkins v. Barnhart*, 350 F.2d 1297 (10th Cir. 2003).

Plaintiff argues that the Commissioner failed to give proper weight to the opinions of Dr. Capicotto, Plaintiff's orthopedic surgeon, and Dr. Singh, Plaintiff's family practice physician.

Plaintiff also argues that the Commissioner failed to provide good reasons for discounting the testimony of her treating physicians.

Before ALJ McGuan's second hearing, Dr. Singh asserted in a medical report on October, 14, 2007 that:

> Marcia Lynch has been a patient of mine since April 1996. She has a diagnosis of fibromyalgia syndrome syndrome; severe arthritis of knees, neck, wrists, fingers; degenerative joint disease of the knees; degenerative disc disease of the neck; bilateral carpel tunnel syndrome; disc herniation at L5-S1 requiring fusion; severe neck, left shoulder and arm pain; constant severe back pain radiating down left leg; TMJ; headaches; sharp pain in wrists and left hip; numbness of left hand; asthma; sleep apnea; depression; anxiety; neurocardiogenic syncope; dizziness; constant fatigue; overall pain of all joints, and side effects of medications, among other conditions and symptoms. Ms. Lynch's condition necessitates that she must be able to rest throughout the day as often as needed, including laying down in a reclined position when and for as long as is necessary throughout the day. In my opinion, the combination of Ms. Lynch's medical conditions have prevented her from engaging in substantial gainful employment since June 1, 1996. It cannot be determined at this time when, if at all, she will be able to return to gainful employment.
> (Tr. at 1179.)

Dr. Capicotto reported on several occasions that Plaintiff suffered from severe medical impairments. In an addendum to a March 24, 1998 medical report to Dr. Singh, Dr. Capicotto wrote that Plaintiff was "suffering from severe osteochondritis dissecans and arthritis of both knees and has undergone lumbar spine surgery. She also suffers chronic fatigue, and in regard to her neck pain, most likely is suffering from some form of disc herniation." (Tr. at 507). In a similar addendum on May 5, 1998, Dr. Capicotto wrote, "I truly believe that with her bilateral osteoarthritis of both

knees, and a spinal fusion, along with degenerative changes in her neck, that she is unemployable." (Tr. at 506.) On September 15, Dr. Capicotto reported that Plaintiff "has advanced arthritis. This lady has had a lumbar discectomy and fusion and multiple surgeries on both knees. I do not believe that she is fit for work..." (Tr. at 590.)

The Appeals Council's final decision of May 13, 2009 fails to explain why the opinions of treating physicians Capicotto and Singh were disregarded. The Appeals Council relied on ALJ McGuan's reasoning when they adopted his evidentiary findings. ALJ McGuan's second decision, on December 26, 2007, however, does not directly address the weight given to the opinions of Dr. Capicotto or Dr. Singh, nor does it acknowledge their medical opinions that Plaintiff suffered from "advanced" and "severe arthritis" of the knees and neck, accompanied by "severe pain" that required her to "rest throughout the day as often as needed."

In his second ruling, ALJ McGuan incorporated his June 26, 2003 opinion, in which he had speculated that Dr. Capicotto's opinion that Plaintiff's spinal impairment prevented her from working should be ignored because:

> That opinion gave no current symptoms, test results or ongoing treatment descriptions to justify his conclusory statement. It also **did not specify the type of work** for which he found the claimant unfit. Dr. Capicotto **may have meant that he thought she was not able to return to her past medium work** as an x-ray technician. It is even more important to note **that the claimant apparently has not found it necessary to return to Dr. Capicotto, or any other physician, for spinal treatment** at

-12-

> any time since June 1998. Dr. Capicotto's October 1999 opinion
> regarding the claimant's spine is not given significant
> weight.
> (Tr. at 173, emphasis added.)

ALJ McGuan also rejected Dr. Capicotto's opinion regarding

Plaintiff's impairment of her knees because:

> A disability opinion two months after knee surgery cannot be
> projected ahead for the 12 months necessary to find the
> impairment disabling. This is particularly true when the
> claimant did not need to be treated by the orthopedic surgeon
> again and her subsequent physician, Dr. Phillips did not find
> her disabled or recommend restricted activity.
> (Tr. at 173-74.)

Both the Appeals Council and ALJ McGuan committed legal error

by failing to provide good reasons for rejecting the opinions of

Dr. Capicotto and Dr. Singh.

ALJ McGuan's professed uncertainty as to what work

Dr. Capicotto thought Plaintiff was unfit for is not justified.

Dr. Capicotto's remarks make clear that he thought Plaintiff was

generally unfit for employment. (Tr. at 506, 512.) It is of no

consequence that Plaintiff did not return to Dr. Capicotto for

further procedures on her spine, as Dr. Capicotto found that

Plaintiff had reached her final maximum recovery from her

discectomy but would nonetheless have a marked partial disability.

(Tr. 511-12.) Plaintiff's decision not to seek further specialist

care was consistent with Dr. Capicotto's opinion that the condition

was final, and that he would see her in the future only on a PRN

basis. (Tr. 511-12.)

ALJ McGuan dismisses Dr. Capicotto's diagnosis of Plaintiff's knees as a mere prediction. This reading of the medical evidence ignores both Plaintiff's repeated medical treatment for her knees prior to this diagnosis and her subsequent unsuccessful injection treatments.

ALJ McGuan also suggests that Dr. Capicotto's medical opinion was unsupported by any objective test results. To the contrary, the 1200 page record is replete with reports of medical tests and procedures consistent with the impairments described by Dr. Capicotto and the symptoms complained of by Plaintiff. In fact, ALJ McGuan's findings, like those of the Appeals Council, record severe medical impairments entirely consistent with Dr. Capicotto's opinion:

> The claimant has the following severe combination of impairments: bilateral knee dysfunction secondary to arthritis; lumbar spine dysfunction; fibromyalgia...
> (Tr. at 57.)

In rejecting Dr. Capicotto's evaluation of these impairments, ALJ McGuan impermissibly substituted his own medical opinion for the opinions of the treating physicians. *Morales v. Apfel*, 225 F.3d 310, 318 (3d. Cir. 2000). "The Commissioner cannot reject [a treating physician's] medical opinion simply by having the ALJ make a different medical judgment." *Id*.

Dr. Capicotto and Dr. Singh both had lengthy relationships with plaintiff. They saw her on many occasions over many years.[3] Dr. Capicotto was an orthopedic surgeon and a specialist in the area of Plaintiff's severe spinal and knee impairments. Their opinions regarding the severity of her impairments are well supported by the numerous surgeries, physical therapy, and other medical tests and procedures Plaintiff received. Uncontradicted by substantial evidence in the record as a whole, the medical opinions of Dr. Capicotto and Dr. Singh should have been given controlling weight.

> *B. The Commissioner committed legal error by finding Plaintiff not credible.*

Because some symptoms, such as pain, are difficult or impossible to substantiate from objective medical evidence alone, a claimant's testimony as to his condition is an important source of evidence. SSA regulations require the Commissioner to take into account a claimant's testimony regarding his own symptoms. *See* 20 CFR § 440.1529 and SSR 96-7p. The Commissioner must consider a claimant's testimony regarding:

(1) The claimant's daily activities.
(2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms.
(3) Precipitating or aggravating factors.

---

[3] Dr. Capicotto saw Plaintiff on at least twenty occasions between May 20, 1996 and October 15, 1999. This includes at least three operative procedures, for a discectomy and for procedures on both her right and left knee. Dr. Singh examined Plaintiff at least twenty times between April 24, 1996 and August 27, 1999.

-15-

(4) The type, dosage, effectiveness, and side effects of any
medication the claimant takes or has taken to alleviate his
pain or other symptoms.
(5) Treatment, other than medication, the claimant receives or
has received for relief of his pain or other symptoms.
(6) Any measures the claimant uses or has used to relieve his
pain or other symptoms (e.g., lying flat on his back, standing
for 15 to 20 minutes every hour, sleeping on a board, etc...).
(7) Other factors concerning the claimant's functional
limitations and restrictions due to pain or other symptoms.
20 CFR 404.1529(c)(3)(i)-(vii).

A claimant's testimony regarding his symptoms will be credited
"to the extent that [his] alleged functional limitations and
restrictions due to symptoms, such as pain, can reasonably be
accepted as consistent with the objective medical evidence and
other evidence." 20 CFR § 404.1529(c)(4).

When determining the credibility of a claimant, Social
Security Ruling (SSR) 96-7p requires the ALJ to consider "the
entire case record, including objective medical evidence, the
individual's own statements about symptoms, statements and other
information provided by treating or examining physicians or
psychologists and other persons about the symptoms and how they
affect the individual, and any other relevant evidence in the case
record." SSR 96-7p, 1. The ALJ must give "specific reasons for the
finding on credibility, supported by evidence in the case record,
and must be sufficiently specific to make clear to the individual
and to any subsequent reviewers the weight the adjudicator gave to
the individual's statements and the reasons for the weight." *Id*.
at 2.

The ALJ must provide more than a "conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p, 4. The ALJ cannot base the finding "on an intangible or intuitive notion about an individual's credibility." *Id*. He cannot "ignore evidence that does not support his decision." *Clinton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Nor can he "pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability" in order to find a claimant non-credible. *Robinson v.* Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); *see also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). The Commissioner cannot conclude without elaboration that a claimant's testimony is incredible because it is generally inconsistent with the evaluator's summary of the record. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

On November 5, 2007, at her final administrative hearing, Plaintiff testified to her numerous impairments and afflictions. (Tr. 107-49.) Plaintiff stated that she experienced constant neck pain (Tr. at 124.) She also testified to having pain upon sitting, standing, bending, or leaning too far or for too long. (Tr. at 127.) She claimed to have frequent headaches that lasted several hours or, occasionally, for days and required her to lie down in a dark room. (Tr. at 121-22.) Plaintiff said that, because of pain, she must lie down three to five times a day, for twenty minutes to

-17-

an hour. (Tr. at 123.) Plaintiff also testified that she receives significant help in her daily life from her daughter and mother. (Tr. at 132.)

The Appeals Council accepted ALJ McGuan's finding that the claimant's testimony was not credible in-part. (Tr. 19.) ALJ McGuan determined that "claimant's allegations are credible only to the extent they are supported by the objective evidence discussed above and in the prior decision." (Tr. at 60.) Consistent with this finding, the Appeals Council held that "the claimant's subjective complaints are credible and supported by the evidence of record, but only to the extent that they relate to the period from June 1, 1996 through June 2, 1998. At all other times, the claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision." (Tr. at 19.)

ALJ McGuan's only further elaboration of his credibility finding in his 2007 decision asserted that Plaintiff's alleged pain level of 7 out of 10 "clearly exaggerated, particularly since she testified that she only takes Tylenol or aspirin (over-the-counter medications)." (Tr. at 60.)

In his 2007 ruling, ALJ McGuan incorporated the findings of his 2003 decision generally (Tr. at 55) and specifically with respect to finding Plaintiff's testimony not credible (Tr. at 60). In his 2003 decision, ALJ McGuan found that Plaintiff's testimony about her knee and spinal problems were not credible.

-18-

ALJ McGuan discredited her testimony concerning her knees and spine because there was "no confirmation of the need for knee arthroplasty in the medical record," Plaintiff sought "no follow-up treatment" for her knee pain after receiving hyalgan shots from Dr. Phillips on February 8, 2000, and "x-rays of the claimant's knees in October 1999 showed mild abnormalities on the left and normal findings on the right." (Tr. at 174.) With regard to her spine, he discredited her testimony because, "Other than neck and shoulder discomfort prior to breast reduction surgery and one or two mentions of coincidental back discomfort while seeing a doctor for other reasons, the claimant has not complained of spinal symptoms since [consulting physical therapist] Mr. Rose found she could do light work." (Tr. at 174.)

The credibility determinations made by ALJ McGuan were legally deficient. The generalized credibility finding made by the Appeals Council failed to provide specific reasons for rejecting Plaintiff's credibility. ALJ McGuan also failed in his second decision to give specific reasons for his general finding that Plaintiff was not credible. His claim that Plaintiff's headaches were "not even remotely supported by the record" is clearly incorrect once the medical opinions of treating physicians Dr. Capicotto and Dr. Singh are considered.

The reasons presented by ALJ McGuan for the credibility determination in his first decision were also legally deficient.

-19-

ALJ McGuan found that Plaintiff's testimony that physicians told her that she would need knee replacements was "not reflected in the records of Drs. Capicotto or Phillips." This is incorrect. Dr. Capicotto notes in his February 27, 1998 report to Dr. Singh that Plaintiff "is going to need a knee replacement in the near future." (Tr. at 508.)

ALJ McGuan found it important that Plaintiff did not return for further treatment for her spine after 1998, or for her knee after 2000. However, Plaintiff had received a final diagnosis from Dr. Capicotto that her spinal condition was maximally recovered but with a permanent marked partial disability to her back. (Tr. at 511-12.) Plaintiff also testified that she faced financial difficulties in seeking treatment and was forced to take out a $3,000 loan in order to obtain chiropractic care for her back pain from March, 2004 through January, 2005 (Tr. at 1181-90), apparently unsuccessfully (Tr. at 119-20). The ALJ gives no reason to discount Plaintiff's belief that her condition was final and that she could not reasonably afford further, likely unavailing treatment.

Plaintiff also sought further treatment for her knees. At the request of Dr. Singh, Plaintiff received x-rays of her left knee which revealed several degenerative conditions. (Tr. at 779.) On May 20, 2005, Plaintiff's left knee was examined by Dr. Wind. (Tr. 910-12.) Plaintiff subsequently obtained an MRI of her left knee and underwent two rounds of synvisc injections for that knee.

Also during this period, Plaintiff continued to visit Dr. Singh for all her symptoms. Plaintiff saw him at least sixteen times between April 30, 2001 and March 28, 2007. Plaintiff testified that she saw Dr. Singh instead of specialists because she could not afford the specialists' higher co-pays. (Tr. at 124.) Plaintiff's continued treatment by Dr. Singh is consistent with continued symptoms in her knees and back.

ALJ McGuan did not find Plaintiff's testimony credible as to her level of pain because Plaintiff relied on over-the-counter medications for her pain. However, 20 CFR 404.1529(c)(3)(v) requires the ALJ to consider not only what medications a claimant used, but what symptoms that claimant experienced. Plaintiff testified that she experienced nausea when she attempted to use stronger pain medications such as Darvocet or Oxycontin. (Tr. at 117.) Additionally, Plaintiff testified that she feared use of these medications would lead to addiction.[4] ALJ McGuan gives no good reasons to discount Plaintiff's testimony on these subjects.

Plaintiff's testimony is broadly consistent with the objective medical evidence and other evidence in the record as a whole. The objective medical evidence consistent with Plaintiff's report of pain and distress includes diagnoses of a herniated disc requiring

---

[4] The manufacturer's warnings for Oxycontin and Darvocet list drug dependency and nausea as possible side-effects. See *Physician's Desk Reference* at 2807-13 (64th Ed. 2010); *Medication Guide Darvocet-N 50 Darvocet-N 100* at 34, Xanodyne Pharmaceuticals, Inc. (2009), available at
http://xanodyne.com/pdf/Darvocet-N50-and-100-Med-Guide.pdf.

-21-

discectomy, diagnoses of osteochondritis dissecans, and diagnoses of osteoarthritis in both knees. This evidence is consistent with the opinions of her treating physicians, and Plaintiff's credibility.

> *C. The Commissioner committed legal error in finding that Plaintiff could perform a restricted range of work at the light exertional level.*

Once a claimant has made a prima facie case of entitlement to disability benefits, the Commissioner bears the burden of showing that the claimant can perform jobs that exist in substantial numbers in the national economy. *Parker v. Harris*, 626 F.2d 225, 231 (2nd Cir. 1980). The Commissioner adopted the testimony of a vocational expert given before ALJ McGuan that such jobs existed in an attempt to meet this burden. The ALJ may rely on a vocational expert's opinion provided the hypothetical posed is supported by substantial evidence. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983). However, "a vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2nd Cir. 1984); *see also Lewis v. Apfel*, 62 F.Supp. 2d 649, 657 (N.D.N.Y. 1999).

ALJ McGuan posed a hypothetical claimant to the vocational expert that failed to take into account Plaintiff's physical limitations which were supported by substantial evidence in the

record. The ALJ asked the vocational expert to consider whether work would be available for a hypothetical individual who would not be able to walk and stand for more than four hours, would require the option to alternate between sitting and standing, and would occasionally have to lift and carry up to 20 pounds. (Tr. at 139.) Additionally, McGuan specified that the individual would not be able to stoop or crouch and was capable of frequent interaction with the public. (Tr. at 140.) These instructions provided only a partial description of Plaintiff's impairments.

The testimony of Plaintiff's treating physicians reveals that she also suffered from degenerative spinal and knee conditions, neck pain, back pain, fibromyalgia, carpal tunnel syndrome, and severe arthritis, among other impairments. Plaintiff testified that she could not sit or stand for too long, that she frequently experienced severe headaches, and that the pain from the combination of her many afflictions forced her to lie down and rest repeatedly throughout the day.

Plaintiff's counsel asked the vocational expert to consider a hypothetical claimant affected by these additional impairments. The vocational expert testified that if these impairments caused Plaintiff to exceed a 10% absenteeism rate, or if she could not remain focused and working at least 80% of the time, then she would be unemployable, given her skill and educational level. (Tr. at 143-45.) The substantial evidence in the record clearly establishes

the existence of Plaintiff's multiple impairments, which would prevent her from meeting these requirements. Plaintiff and her physicians credibly testified to her need to lie down and rest repeatedly throughout the day, compromising her productivity, and the disabling pain Plaintiff credibly experiences could easily cause her absenteeism rate to exceed the allowed rate.

It was error for the Appeals Council to rely on the vocational expert's testimony before ALJ McGuan in finding that Plaintiff could perform work that existed in substantial numbers, because the vocational expert's opinion was not premised on a complete consideration of her limitations which were supported by the medical evidence in the record. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2nd Cir. 1984).

## Conclusion

A claimant "need not be an invalid to be found disabled under the Social Security Act." *Meadors v. Astrue*, 370 Fed. Appx 179, n. 2 (2d Cir. 2010). The standard for disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment... which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C § 423(d)(1)(A). Plaintiff has met this standard.

More than thirteen years have passed since Plaintiff first filed for disability benefits. Plaintiff's final decision has been

delayed for years for reasons which she did not cause. For three years during that period, the Commissioner lost the case file and was unable to provide (as required) a complete record for Plaintiff to prepare her appeal.

Plaintiff's disabling impairments are extensive and well documented in the 1200 page record. The finding by the Commissioner that Plaintiff's disability ceased on June 2, 1998 was based on errors of law and was not supported by substantial evidence. Accordingly, I find that the record contains substantial evidence of Plaintiff's disability, and further evidentiary proceedings would serve no purpose. The Court denies the Commissioner's motion for judgment on the pleadings, grants the Plaintiff's cross-motion for judgment on the pleadings, and remands to the Social Security Administration for calculation and payment of benefits consistent with this opinion.  This Court finds that plaintiff's disability continued beyond June 2, 1998.

**ALL OF THE ABOVE IS SO ORDERED.**


                                   s/Michael A. Telesca
_____
                                   MICHAEL A. TELESCA
                                   United States District Judge

Dated:     Rochester, New York
           June 21, 2009

-25-